**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| ROBERT THOMAS THORN, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:20-CV-00471-CAN |
| | § | |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**I.     PROCEDURAL HISTORY OF THE CASE**

On November 16, 2017, Robert Thomas Thorn, Jr. ("Plaintiff") filed his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Title XVI") [TR 29]. Plaintiff's amended onset of disability date is December 16, 2017 [TR 11, 33]. Plaintiff was born on December 16, 1967, making him fifty (50) years of age at the time of onset and fifty-one (51) years of age at the time of decision [TR 19-21]. His age classification at all relevant times was that of a "person closely approaching advanced age." *See* 20 C.F.R. § 416.963(d). On March 1, 2018, Plaintiff's application was denied by notice [TR 91-94], and again upon reconsideration on July 12, 2018 [TR 104-06]. Plaintiff requested an administrative hearing ("Hearing") [TR 109], which was held before an Administrative Law Judge ("ALJ") on July 25,

2019 [TR 26-68]. At Hearing, Plaintiff and a vocational expert ("VE") presented testimony [TR 29-68]. Plaintiff was also represented by counsel at Hearing [TR 29]. On September 16, 2019, the ALJ issued an unfavorable decision denying Plaintiff's application for SSI [TR 8-21]. After hearing testimony and conducting a review of the facts of the Plaintiff's case, the ALJ made the following sequential evaluation [TR 13-20]. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 16, 2017—the amended alleged onset date [TR 13]. At step two, the ALJ found Plaintiff has the following severe impairments: right upper extremity congenital malformation with chest wall reconstruction; left shoulder osteoarthritis; thoracic and cervical spine pain; neuropathy; and obesity [TR 13]. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926) [TR 15]. At step four, the ALJ determined Plaintiff has the following residual functional capacity:

> [T]he claimant has the residual functional capacity to light work, defined in 20 CFR 416.967(b) as the ability to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours of an 8-hour day, and sit 6 hours of an 8-hour day. However, Claimant can never climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs. He can occasionally stoop and crouch but can never crawl or kneel. Claimant is limited to occasional pushing and/or pulling for operation of hand controls with his right dominant hand. Claimant can occasionally reach overhead with both arms and can frequently reach in other directions with both arms. Claimant can frequently handle and finger with his right hand.

[TR 16]. Continuing the step four analysis, the ALJ found Plaintiff is unable to perform any past relevant work [TR 19]. At step five, the ALJ determined, "[c]onsidering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a)" [TR 19-20]. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security

Act, since November 16, 2017, the date the application was filed, through the date of the ALJ's decision [TR 20].[1]

On November 13, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 165-67]. On April 20, 2020, the Appeals Council denied Plaintiff's request, making the decision of the ALJ the final decision of the Commissioner [TR 1-6]. On June 15, 2020, Plaintiff filed the instant suit [Dkt. 1]. On October 26, 2020, the Administrative Record was received from the Social Security Administration [Dkt. 16]. On December 27, 2020, Plaintiff filed his Opening Brief [Dkt. 20]. On February 19, 2021, the Commissioner filed its Brief in Support of the Commissioner's Decision [Dkt. 21], and Plaintiff filed his Reply Brief on March 1, 2020 [Dkt. 22].

Plaintiff's appeal challenges the ALJ's residual functional capacity assessment [Dkt. 20 at 10-15, 17], specifically the finding that Plaintiff can occasionally reach overhead with both arms, can frequently reach in other directions with both arms, and can frequently handle and finger with his right hand [TR 16]. As such, the Court summarizes the relevant medical evidence and hearing testimony on this issue. All Parties acknowledge that the medical record is limited, with the first relevant record dated December 18, 2017.[2]

---

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. §§ 404.1520, 416.920. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

[2] Prior to this date, Plaintiff was in prison; during his incarceration, Plaintiff purportedly advised prison health care providers that, for years, he had experienced mild pain in his right arm that comes and goes [TR 278].

*Relevant Medical Records*

On December 18, 2017, Plaintiff presented to the Grayson County Health Clinic complaining of back pain, where he was treated by Dr. Rodger Mattson, D.O. [TR 261]. Plaintiff gave an initial history of present illness, reporting that he was seeking treatment for back pain, a rib that seemed "out of place," and lower extremity burning/aching [TR 261]. Plaintiff was born with a congenital birth defect where his right hand is smaller than the left but "had all 5 digits and complete motor and sensory [function]" [TR 261].[3] Plaintiff also had not developed a right pectoralis or dorsi muscle [TR 261]. Upon physical examination, Dr. Mattson indicated: Right pectoralis muscle absent from chest wall; Third rib on left appears to protruded; "Full range [of] motion of bilateral upper extremities;" "Right hand is small in comparison to left hand but without anatomical deficit;" "[M]otor strength normal upper and lower extremities" and sensory exam intact [TR 262]. Plaintiff was assessed with congenital malformation, neuropathy, and thoracic back pain of unspecified chronicity [TR 263]. Dr. Mattson found Plaintiff was likely experiencing muscle spasms; as a result, Plaintiff was encouraged to perform daily stretching exercises to resolve this (which were demonstrated and performed during treatment) [TR 262]

On January 8, 2018, Plaintiff returned to Dr. Mattson seeking alternative pain management after suffering an allergic reaction to a medication prescribed during his last exam [TR 264]. Plaintiff's report of his symptoms elaborated on the nature of his upper extremity pain, describing it as "achey/tight/burning" in his shoulders, right arm, and mid-back that "is not new and has not progressively worsened," but that had become intolerable [TR 264]. Dr. Mattson again found Plaintiff had "full range [of] motion of bilateral upper extremities" and referred him to a pain management doctor, Dr. Kenneth Anderson, M.D. [TR 264-65].

---

[3] Plaintiff's record states he has "Poland syndrome," which is "absence of the right pectoral muscle and brachydactyly of the right hand" [TR 284].

MEMORANDUM OPINION AND ORDER – Page 4

From February 27, 2018, through July 15, 2019, Plaintiff saw Dr. Anderson on a consistent basis for physical therapy and pain management at New Horizons Pain Care Center [TR 338-83]. Plaintiff presented on February 27, 2018, reporting that medication was reducing his pain and allowing him to remain active [TR 338-40]. At that appointment and consistently thereafter, Plaintiff reported that his pain level was tolerable and that he remained active [TR 340, 343-36, 349, 352, 355, 358, 361, 364, 367, 370, 373, 376, 379]. On July 15, 2019, the last reported treatment in Plaintiff's records, Plaintiff reported that his pain had increased due to surgery he underwent the week prior to reconstruct/correct his ribs [TR 383].[4] Plaintiff indicated that he had been less active than he was prior to undergoing surgery [TR 383]. Plaintiff's pain management records otherwise indicate that "physical therapy [was] going well," and he "continue[d] to achieve the goal of decreased pain and increased daily functionality as discussed" at the beginning of his treatment [TR 352, 379].

During this same time frame, Plaintiff continued to be treated at Grayson County Health Clinic. On April 11, 2018, Plaintiff was seen there by Dr. William Featherston, M.D. [TR 251]. Dr. Featherston, as had Dr. Mattson, noted that Plaintiff had full range of motion in his bilateral upper extremities [TR 252]. On June 28, 2018, Plaintiff returned to the Grayson County Health Clinic, where he was again seen by Dr. Featherston [TR 266]. Dr. Featherston continued to report that Plaintiff had full range of motion of his bilateral upper extremities and that his motor strength was normal [TR 267]. On August 29, 2018, Plaintiff returned for a further follow-up with Dr. Featherston, reporting he "has improved pain control and has improved sleep hygiene with the use

---

[4] On June 11, 2019, Plaintiff saw Dr. Vicky Chappell, M.D. for surgery for dislocation of a rib from his sternum [TR 282-85]. Plaintiff's record indicates he has "chest pain since what he thought was a dislocation of his rib," resulting from a wrestling incident or lifting a heavy object, which was confirmed by a chest x-ray showing a cartilage protrusion in the "exact location" where Plaintiff indicated he had pain [TR 284].

of" Cymbalta [TR 268]. Plaintiff was assessed with chronic pain, and he was directed to continue seeing his pain management doctor and to attend physical therapy [TR 269].[5]

On October 22, 2018, Plaintiff was referred by the Grayson County Health Clinic to an orthopedist, Dr. Jeremy Urbanczyk, D.O., for pain in his left shoulder [TR 334]. Dr. Urbanczyk performed a physical exam, assessing Plaintiff with "full range of motion to each shoulder actively and passively," and 4/5 strength in the left rotator cuff and 5/5 strength in the right rotator cuff. From radiological impressions, Dr. Urbanczyk assessed Plaintiff with left shoulder impingement syndrome and joint osteoarthritis. Plaintiff was treated with an injection to the left shoulder and shoulder joint, and he was instructed to complete physical therapy [TR 336].

*Consultative Examiner—Dr. Smith*

On February 10, 2018, consultative provider Dr. William Smith, M.D., completed a Medical Source Statement ("MSS") and examined Plaintiff [TR 240-45]. Notably, Dr. Smith expressly qualifies his report by noting there were no medical records available for review in forming his opinions [TR 244], likely as the bulk of Plaintiff's medical records fall after the date of the MSS. Dr. Smith's report indicates a present history of a right-hand deformity for which Plaintiff indicated affects his ability to grasp, handle, and finger at work and causes him 8/10 pain on most days [TR 240]. Scoliosis was the other chief complaint raised by Plaintiff, which he told Dr. Smith also causes him 8/10 pain on most days [TR 240]. Dr. Smith conducted a musculoskeletal exam with the following findings, in relevant part:

> No joint swelling, erythema, or effusion. There was tenderness to palpation on the right shoulder. There was deformity on the sternum and right clavicle. The claimant was able to lift, carry and handle light objects with the left side only. Fine and gross manipulative abilities were grossly abnormal on the right. The claimant was able to squat and rise from that position with ease. The claimant was able to rise from a

---

[5] Plaintiff's representative requested an assessment from Plaintiff's providers at Grayson County Health Clinic [TR 232]; however, at Hearing, Plaintiff's representative indicated one would not be forthcoming [TR 31].

> sitting position without assistance and had no difficulty getting up and down from the exam table. . . .

[TR 243]. Dr. Smith conducted a cervical, shoulder, elbow, wrist, and hand range of motion test for Plaintiff's right and left sides. The right and left elbow, wrist, and hand showed full range of motion for all movements tested. Only Plaintiff's right shoulder revealed reduced range of motion, and only for two of the five movements—his range of motion for right-side abduction was 15/150 and 90/150 for forward elevation [TR 244]. The right shoulder showed full range for internal rotation, external rotation, and adduction, and the left shoulder showed full range of motion for all five movements. From the physical exam, Dr. Smith listed as probable diagnoses: chronic right chest, shoulder, and right upper extremity congenital deformity; left shoulder rotator cuff tendinopathy; scoliosis; and chronic back pain [TR 244].

Dr. Smith's report states the following findings. Plaintiff has a deformity of the right hand, right chest, right shoulder, and right upper extremity, with "atrophy of the right pectoralis major muscle" [TR 244]. The "fingers of [Plaintiff's] right hand are significantly shorter than the fingers of his left hand" [TR 244-45]. Plaintiff's right upper extremity had "decreased muscle strength" as well as "limited range of motion" in the right shoulder [TR 245]. Dr. Smith noted Plaintiff has "pain with range of motion testing in the left shoulder as well as examination findings consistent with left rotator cuff tendinopathy, such as decreased abduction, strength and pain with abduction exercises" [TR 245]. The Court notes that Dr. Smith's narrative, which indicates Plaintiff had decreased abduction and strength in the left shoulder, is inconsistent with his physical examination results. The physical examination conducted showed Plaintiff's left-side muscles all had full strength (5/5), including the deltoids, biceps, and triceps at full strength, and the range of motion test showed full range for left shoulder abduction (150/150 on a scale from 0 to 150) [TR 243-45]. Dr. Smith's CE report concludes with the following assessment of Plaintiff's limitations:

> The claimant can be expected to sit, stand and walk normally in an 8-hour workday with normal breaks. The claimant does not need an assistive device with regards to short and long distances and uneven terrain. The claimant has mild limitations with lifting and carrying weight due to right shoulder and right upper extremity deformity. There are no limitations on bending, stooping, crouching, squatting and so on. There are manipulative limitations on reaching, handling, feeling, grasping and fingering and the claimant will be able to perform these occasionally due to right upper extremity deformity and shoulder pain. There are no relevant visual, communicative or work place environmental limitations.

[TR 245]. Drawing attention to the contested limitations, Dr. Smith found occasional reaching, handling, and feeling on Plaintiff's right side. Dr. Smith's examination does not delineate between reaching overheard versus reaching in other directions.

*SAMCs—Dr. Allen and Dr. Billinghurst*

State agency medical consultants (SAMCs) Dr. Andrea Allen, M.D., and Dr. Craig Billinghurst, M.D., completed disability assessments at the initial and reconsideration level, respectively. Dr. Allen's disability determination explanation, dated February 22, 2018, included review of Plaintiff's records from CE Dr. Smith and Plaintiff's own function report, but none of Plaintiff's other records, specifically from Dr. Mattson or Dr. Featherston, were available for Dr. Allen's review [TR 70-71]. Dr. Allen found the medical evidence did not substantiate Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms he listed: pain, loss of sensation, and weakness [TR 72]. Dr. Allen indicated the following manipulative limitations: (1) reaching any direction (including overhead): limited for right in front and/or laterally, and right overhead; (2) handling (gross manipulation): limited for the right; and (3) fingering (fine manipulation): limited for the right [TR 74]. The explanation below these findings states, "RIGHT ARM DEFORMITY occ use" [TR 74]. Additional explanation provided for the RFC states, in relevant part: Wrist flexion, extension, abduction and hand grip were 3/5 on the right side and 5/5 on the left; No joint swelling and tenderness on right shoulder; Able to lift objects "with the left

side only" [TR 75]. Dr. Allen noted that the assessment period begins the month of filing, as insufficient evidence exists prior [TR 75]. As to Plaintiff's vocational factors, Dr. Allen concluded Plaintiff could not perform his past work as a truck driver, which is described as medium, but that he "will be able to perform other less demanding use of upper extremities jobs. Despite his upper arm limitation [Plaintiff] still work[ed] as a driver for at least two years" [TR 76]. Dr. Allen concluded Plaintiff "has a light RFC with restriction in upper extremities but is able to perform other work which requires use of one hand" [TR 76].

On reconsideration, Dr. Billinghurst reviewed similar medical record evidence as Dr. Allen, with the addition of Plaintiff's medical evidence records from Grayson County Health Clinic, from which he found evidence of "malformation involving the right upper extremity" [TR 81, 83]. The report notes the evidence as a whole is not sufficient to support a decision on the claim [TR 83]. Dr. Billinghurst concurred with Dr. Allen's report that Plaintiff's indication as to the nature of his symptoms is not supported by objective medical evidence and was only partially consistent with all evidence in the record, medical or non-medical [TR 84]. Dr. Billinghurst found the same manipulative limitations as Dr. Allen, indicating reaching, handling, and fingering were limited to the right side only and that these manipulations can be performed occasionally with Plaintiff's right arm [TR 86]. His RFC assessment was also consistent with Dr. Allen's, explaining Plaintiff has a light RFC and can perform jobs that require use of one hand [TR 88]. Dr. Billinghurst concluded with a personalized disability explanation finding:

> Your conditions results in some limitations in your ability to perform work related activities. However, these limitations do not prevent you from performing work you have done in the past as a/an DRIVER, as you described. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information and work experience in determining how your condition affects your ability to work.

[TR 89].

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1985); 42 U.S.C. § 405(g). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1984); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). It is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, but it will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

Disability insurance is governed by Title II, 42 U.S.C. §§ 404 *et seq.*, and SSI benefits are governed by Title XVI, 24 U.S.C. §§ 1381 *et seq.*, of the Social Security Administration. The law and regulations governing the determination of disability are the same for disability insurance and SSI. *Greenspan*, 38 F.3d at 236. The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 416.920(a)(4).

## ANALYSIS

Plaintiff raises on appeal whether substantial evidence supports the ALJ's RFC determination that found Plaintiff can frequently reach forward, handle, and finger with his right upper extremity [Dkt. 20 at 5, 10]. Plaintiff asserts that the ALJ "arbitrarily rejected uncontroverted medical evidence regarding Plaintiff's use of the upper extremities" [Dkt. 20 at 10]. The Commissioner conversely argues that the manipulative limitations were not uncontroverted in the record, that the ALJ properly considered the totality of the evidence in determining Plaintiff's RFC, and that the ALJ "may weigh the competing [medical] opinions, take into consideration all of the other evidence of the record, and make a finding that may not be exactly the same as the opinion of any one medical source" [Dkt. 21 at 5-7].

As a threshold issue, the Social Security Administration has promulgated a new rule for assessing medical opinion evidence, which governs all claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c.[6] The new rule provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources."[7] 20 C.F.R. § 416.920c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations:

---

[6] The old rule required the ALJ to give a treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). The new rule eliminates the "controlling weight" given to treating physicians. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because of the date of filing of Plaintiff's claim, the new rule applies.

[7] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020). "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources and instead focus on the persuasiveness of the evidence itself. Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id*.

(1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 416.920c(a), (c)(1)-(5). Supportability and consistency are the most important factors. *See* 20 C.F.R. §§ 416.920c(a), 416.920b(2). The new rule also changed the articulation required by ALJs in their consideration of medical opinions.[8]

Here, the ALJ applied the correct legal standard for assessing medical evidence for claims filed after March 27, 2017 [TR 16],[9] and also properly assessed the supportability and consistency of the medical opinions. *See* 20 C.F.R. § 416.920c. The ALJ made a specific determination that

---

[8] The new articulation requirements are as follows:
> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 416.920c(b)(1)-(2).

[9] The RFC assessment further explains:
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned has also considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR 416.920c.

[TR 16].

she found Dr. Smith's opinion supportable (persuasive) in part but inconsistent as to the limitations related to the right upper extremity. The ALJ Determination explains at length:

> Consultative provider, Dr. Smith, opined that claimant had no problems with normal standing, walking, or sitting in an 8-hour day and did not require an assistive device. He found claimant had a mild limitation with lifting and carrying due to his right upper extremity deformity. Dr. Smith did opine that claimant could only occasionally reach, handle, and finger with his right upper extremity. (Exhibit 1F/6). The undersigned finds this opinion persuasive as to claimant's ability to perform work at the light exertional level, as it is consistent with other opinions in the record and is supported by the record as a whole. *The undersigned finds the limitations with regard to use of the right upper extremity less persuasive, as the majority of claimant's examinations show normal use of the right upper extremity and some pain with range of motion but he has not reported progressive pain. (Exhibits 5F/2-3, 6-7, 9; 7F; 8F/3; 12F; 13F/7, 10-47).*

[TR 18] (emphasis added). The ALJ made similar findings for the SAMC reports, finding them supportable as to the light work finding with additional manipulations but found the right-side limits inconsistent with the record:

> State agency medical consultants, Andrea Allen, M.D., and Craig Billinghurst, M.D., both opined that claimant is capable of performing work at the light exertional level with additional postural limitation and manipulative limitations with the right upper extremity. The undersigned finds these opinions persuasive, as they are consistent with other opinions in the record as well as claimant's examinations and objective findings. *The undersigned finds the limitations with regard to use of the right upper extremity less persuasive, as the majority of claimant's examinations show normal use of the right upper extremity and some pain with range of motion but he has not reported progressive pain. (Exhibits 5F/2-3, 6-7, 9; 7F; 8F/3; 12F; 13F/7, 10-47)*. However, the medical evidence received at the hearing level supports additional limitation in reaching regarding claimant's left shoulder, which is reflected in the residual functional capacity set out above, in addition to the limitations given in these opinions.

[TR 18-19] (emphasis added). Contrary to Plaintiff's assertion that the ALJ rejected "uncontroverted" opinions, the ALJ's Determination extensively discusses the evidence in the record that supports the RFC assessment, including, but not limited to, the following excerpts:

When claimant went to the Grayson County Health Clinic in December 2017, he stated that he had not seen a physician in several years. His examination showed thoracic muscle spasm. It also showed that claimant's right hand was smaller than his left hand but without anatomical deficit. (Exhibit 5F/2-3).

Dr. Smith's consultative examination showed weakness in claimant's right deltoids, wrist, hand, and finger. Claimant's right hand fine and gross manipulation were grossly abnormal and he could only lift, carry, and handle light objects with his left hand. Dr. Smith also noted that claimant had atrophy of his right pectoral muscle and pain with range of motion of his left shoulder. (Exhibit 1F/1-6).

Claimant saw pain management specialist, Kenneth Anderson, M.D., on February 27, 2018, stating that he had more good days than bad days regarding pain over the last few weeks and his medications allowed him to remain active. (Exhibit 13F/2-4). Although claimant reported having a difficult few weeks in October 2018, he also state that he remained active as usual. Dr. Anderson noted that claimant looked well. (Exhibit 13F/20-22). In March and April of 2019, claimant relayed to Dr. Anderson that he had been more active than usual and his pain level was tolerable. Dr. Anderson noted that claimant look well. (Exhibit 13F/32-37). On July 15, 2019, one week after his chest wall surgery, claimant told Dr. Anderson that his pain level was elevated and he had not been as active as usual. (Exhibit 13F/45-47).

As for claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because claimant's providers have treated him very conservatively. He was sent for physical therapy, which he told Dr. Anderson was going well when he saw him in August 2018. (Exhibit 13F/14-16) Claimant received one steroid injection in his left shoulder but no other procedures are indicated in the record. (Exhibit 12F/1-3). Examinations show normal motor strength and sensory in his upper bilateral extremities and lower bilateral extremities, full range of motion, pain in his right upper extremity that has not progressively worsened and reported improved pain control and sleep hygiene with Cymbalta. (Exhibits 5F/2-3, 6-7, 9; 7F; 8F/3; 12F; 13F/7, 10-47). Per his own report, claimant remains able to perform his activities of daily living and care for his pets despite his impairments. (Exhibit 3E/3). He also does some cleaning and laundry, drives, and grocery shops once a week. (Exhibit 3E/4-5). Although prior to his amended onset, claimant's prison records show that he had no medical restrictions in February 2017 or April 2017, despite his request for a medical restriction in April 2017. (Exhibit 8F). To minimize aggravation to his right upper extremity congenital malformation with chest wall reconstruction; left shoulder osteoarthritis; thoracic and cervical spine pain; neuropathy; and to mitigate the effects of obesity, the residual functional capacity restricts claimant to work at the light exertional level with additional exertional, postural, and manipulative restrictions. However, the medical evidence supports a finding that claimant is not precluded completely from using his right arm or left arm, despite his allegations.

[TR 17-18]. The ALJ thus narratively summarizes the evidence related to Plaintiff's right upper extremity, and specifically outlines records relied upon in discounting the restrictions on reaching stated by Drs. Smith, Allen, and Billinghurst.[10] Indeed, the ALJ repeatedly cites to the records from Dr. Mattson and Dr. Featherston, which largely post-date the CE exam, each finding Plaintiff to have normal use, motion, and strength in his upper extremities. The records note, in part, as to Plaintiff's right hand/side "all 5 digits and complete motor and sensory [function]" and "right hand small in comparison to left hand but without anatomical deficit" [*See e.g*, TR 252, 261]. In addition to the treatment records from Dr. Mattson and Dr. Featherston that found Plaintiff had full range of motion and normal motor strength and sensory in his upper bilateral extremities [TR 262, 265], the ALJ further pointed to Plaintiff's own Hearing testimony in discounting the restrictions, among the references were Plaintiff's statement that he "had no problems with grip in his left hand" and "can lift a coffee mug with his right hand" [TR 17, 52-53]. The ALJ's thorough explication of the evidence demonstrates Plaintiff's claim that the opinions of Drs. Smith, Allen, and Billinghurst are "unconverted" does not have merit. *See Guillory v. Saul*, No. 1:19-CV-632, 2021 WL 1600283, at *11 (E.D. Tex. Apr. 23, 2021) (internal citations omitted) (affirming where the "ALJ's decision sufficiently reflects his substantial compliance with the requirements of 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3)," noting "the ALJ cited the pertinent Regulations, which demonstrate their relevance in his deliberations of [p]laintiff's subjective symptoms," "the ALJ summarized evidence relevant to the factors," and "the ALJ articulated legitimate reasons for his decision."); *Renovato v. Saul*, No. H-20-643, 2021 WL 966098, at *6 (S.D. Tex. Mar. 15, 2021) (affirming an ALJ's decision that rejected a consultative examiner's opinion who determined

---

[10] The ALJ cites the following Exhibits as constituting the "majority of [Plaintiff's] examinations": Exhibits 5F/2-3, 6-7, 9; 7F; 8F/3; 12F; 13F/7, 10-47 [TR 18-19].

plaintiff could never finger, feel, push, or pull, despite a fairly normal physical examination, and which was controverted by other record evidence).[11]

Plaintiff next argues the ALJ's RFC assessment is not supported by substantial evidence because the ALJ improperly substituted her own unqualified lay opinion after rejecting the limitations that Plaintiff could only occasionally engage in reaching, handling, and fingering with his right upper extremity [Dkt. 20 at 11-13]. In urging that the ALJ relied upon her own medical judgment, Plaintiff quibbles with the ALJ's reasoning in the Determination, arguing that the reasons for rejecting the disputed limitation do not withstand scrutiny. In support, Plaintiff points to a line in the Determination that Plaintiff "is not precluded completely from using his right arm or left arm." Plaintiff argues none of the doctors ever said Plaintiff was "precluded completely" from using his arm [Dkt. 20 at 13]. Plaintiff next references the text of the Determination stating that the disputed limitations were not persuasive because "claimant's examinations show normal use of the right upper extremity"; Plaintiff urges this too is not enough to support the decision because the records reflecting normal use, motion, and strength do not specifically delineate Plaintiff's ability to reach.[12] The Court is not persuaded by Plaintiff's attempts to dissect the ALJ's reasoning.

---

[11] Plaintiff has not identified any analogous post-2017 cases (under the new rule) supporting a different result.

[12] To the extent Plaintiff argues the RFC lacks substantial evidence as to use of his left arm, the report by Dr. Urbanczyk that the ALJ cited states Plaintiff has "full range of motion to each shoulder actively and passively," "5/5 rotator cuff strength" in his right shoulder, and "4/5 cuff strength" in his left [TR 336]. The ALJ weighed this evidence of Plaintiff's limitations in light of all evidence in the record and factored those opinions into her assessment of Plaintiff's RFC. There has never been a requirement in the Fifth Circuit that an RFC precisely match an expert medical opinion. *Dixon v. Comm'r*, No. 4:18-CV-634, 2019 WL 5875901, at *1 (E.D. Tex. Sept. 27, 2019). Nor is it required that the ALJ merely adopt one medical opinion or the other. *See Fleming v. Saul*, No. SA-19-CV-00701-ESC, 2020 WL 4601669, at *7 (W.D. Tex. Aug. 10, 2020) (citing *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012)) ("Although the ALJ did not adopt in its entirety any one medical opinion of record in fashioning his RFC, he also did not completely reject every opinion either. Instead, the ALJ properly evaluated all of the medical opinions in the record (none of which arose out of a treatment relationship) in accordance with the Section 404.1520c's more flexible methodology for analyzing opinion evidence and exercised his discretion to resolve conflicts in the evidence to assess the RFC based on all the relevant evidence in the record.").

It is well established that the RFC finding reflects a disability claimant's maximum remaining ability to perform work activities despite his or her medically determinable impairments. 20 C.F.R. § 416.945(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC assessment is based on "all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3)), including, but not limited to: medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184, at *5. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985); *see Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001); *Pavel v. Saul*, No. 1:19-CV-620-RP-AWA, 2020 WL 4364226, at *3 (W.D. Tex. July 30, 2020) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). The ALJ as "factfinder" is not required to incorporate limitations in the RFC that he or she did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014).[13] The inquiry for the Court is whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000);[14] *see Perez v. Barnhart*, 416 F.3d 457, 461 (5th Cir. 2005); *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *4-5 (N.D. Tex. July 9, 2021) (finding no error where the ALJ determined that [the treating physician's] opinion was inconsistent with the record

---

[13] "The ALJ is not confined to picking one opinion and adopting it." *D.J.M. v. Berryhill*, No. 18-cv-0193, 2019 WL 1601491, at *4 (W.D. La. 2019). "Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source." *Id.*

[14] Plaintiff is correct that in determining the RFC the ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his or [her] position," *Loza*, 219 F.3d at 393; however, the ALJ (not the Court) interprets and weighs any conflicts in the medical evidence. *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016).

as to the limitations he expressed). The thoroughness of the ALJ's decision shows careful consideration of the medical records and testimony. The record clearly contains evidence that is inconsistent with the medical opinions Plaintiff relies upon, and which supports the RFC. The ALJ properly articulated his consideration of the medical findings and the persuasiveness of the medical opinions. The objective medical evidence provides substantial evidence to support the ALJ's RFC determination. *See Martinez v. Saul*, No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *5-6 (W.D. Tex. June 3, 2021) (finding substantial evidence for the RFC where the ALJ considered all objective medical evidence in the record); *Gina R. v. Comm'r*, No. 3:19-CV-2038-BK, 2021 WL 1209198, at *3-4 (N.D. Tex. Mar. 30, 2021) (finding substantial evidence for the ALJ's RFC assessment where the full medical record did not support the limitations put forth by the consultative examiner).[15]

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's Decision should be **AFFIRMED**.

SIGNED this 12th day of August, 2021.

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[15] Plaintiff opines as to why some of the Exhibits cited by the ALJ are potentially not relevant [Dkt. 20 at 15 n.6]. Without deciding whether Exhibit 7F, 8F, and 12F are in fact irrelevant to Plaintiff's manipulation limitations, even if the Court were to exclude these from consideration, the evidence from Dr. Mattson, Dr. Featherston, Dr. Urbanczyk, and Dr. Anderson are not controverted by the other exhibits. The ALJ repeatedly references Exhibits 5F, 12F, and 13F as the basis upon which she weighed evidence and determined credibility, which include the treatment records for Dr. Mattson, Dr. Featherston, Dr. Urbanczyk, and Dr. Anderson, respectively. "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds the Commissioner made an error of law." *Leggett*, 67 F.3d at 564.